**OSWEGO BARGE CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 84–11–01604.**

United States Court of International Trade.

July 9, 1987.

Healy & Baillie (George M. Leing and John C. Koster, New York City, at the trial and on the brief), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C.; Joseph I. Liebman, Attorney in Charge, International Trade Field Office (Veronica A. Perry, at the trial and on the brief), New York City, for defendant.

**MEMORANDUM OPINION**

RE, Chief Judge:

Plaintiff, Oswego Barge Corp., brought this action to recover customs duties paid on certain repairs made in a foreign country to the Nepco 140, an oil tanker barge of American registry. Plaintiff maintains that, pursuant to 19 U.S.C. § 1466, the duties should have been remitted by the Secretary of the Treasury.

Plaintiff contends that, under the facts presented, the Secretary's refusal to remit the duties in question was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In the alternative, plaintiff asserts that, as applied to the facts of this case, the statute which autho-

rizes the assessment of duty on the cost of foreign repairs is unconstitutional as violative of plaintiff's fifth amendment right to due process of law.

The questions presented are whether the Secretary's refusal to remit the duties paid on the repairs made in Canada was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and whether, as applied to the facts of this case, section 1466 of title 19 U.S.C. is constitutional.

It is the holding of the court that the Secretary's determination not to remit the duties under section 1466 of title 19 U.S.C. was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Since the court also holds that, as applied to the facts of this case, section 1466 is constitutional, the determination of the Secretary is affirmed, and the action is dismissed.

The Nepco 140 is a steel oil tanker barge which is registered in the United States. The barge was employed to carry fuel oil from the Montreal area to a power plant in Oswego, New York. During a journey to Oswego, the barge, carrying over 100,000 barrels of fuel oil, struck ground while in fog, and suffered damage to several of its cargo tanks. A "massive oil spill" followed the grounding. *See In re Oswego Barge Corp.*, 664 F.2d 327, 331 (2d Cir.1981), *reh'g denied*, 673 F.2d 47 (1982); *see also In re Oswego Barge Corp.*, 439 F.Supp. 312, 314 (N.D.N.Y.1977). As a result of the oil spill, the governments of the United States and Canada conducted a joint clean-up operation in the Saint Lawrence Seaway. During the joint clean-up effort, most of the oil remaining in the damaged tanks was transferred to another vessel. The Coast Guard authorized the Nepco 140 to continue to Oswego, New York, its intended destination, where the balance of its cargo was discharged. Upon completion of the clean-up, the United States brought an action against plaintiff to recover both its own expenses and those it was forced to reimburse the Canadian government, a total of approximately 9 million dollars. 439 F.Supp. at 321.

Following its arrival at the port in Oswego, the Nepco 140 was inspected and a damage report was prepared. Based on this report, the Port Engineer determined that, for the Nepco 140 to be repaired, it needed to be "drydocked," that is, lifted completely out of the water. The Engineer also determined that, since the Nepco 140 might sink in an attempt to make an extended voyage, a nearby repair facility was necessary. Plaintiff contends that the Nepco 140 was repaired at a Canadian shipyard because no American shipyard could be found that could make the necessary repairs within a safe distance. The repairs performed in Canada included "owner's work," that is, ordinary maintenance repairs not caused by the groundings, and which did not require drydocking.

After the barge was repaired and returned to the United States, pursuant to section 1466 of title 19 U.S.C., plaintiff was required to pay $125,000 for duties on the repairs made to the Nepco 140 in Canada. Plaintiff subsequently instituted this action seeking a remission or refund of the duties paid. Alternatively, it sought a determination that the remission statute, as applied, was unconstitutional.

Section 1466 of title 19 U.S.C., authorizes the Secretary of the Treasury to remit or refund duties assessed on the cost of foreign repairs if, in the Secretary's discretion, the statutory criteria for remission have been met. 19 U.S.C. § 1466. This court has held that the Secretary's discretionary decision not to remit duties is reviewable under the pertinent provisions of the Administrative Procedure Act. *See Suwannee S.S. Co. v. United States*, 70 Cust.Ct. 327, 333, CRD 73–3, 354 F.Supp. 1361, 1366 (1973).

Section 10 of that Act provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

Administrative Procedure Act § 10, 5 U.S.C. § 706(2)(A) (1982).

In cases of express delegation of discretionary authority, it is clear that the standard of judicial review is limited. *See Suwannee S.S. Co. v. United States*, 79 Cust.Ct. 19, 23, C.D. 4708, 435 F.Supp. 389, 392 (1977). In addition, it is well established that "[i]f the administrative decision has a rational basis in fact and is not contrary to law, the courts will not substitute their discretion for that of the administrator." *Mount Washington Tanker Co. v. United States*, 1 CIT 32, 35, 505 F.Supp. 209, 212 (1980), *aff'd*, 69 CCPA 23, 665 F.2d 340 (1981).

Plaintiff contends that the duties assessed on the cost of repairs made to the Nepco 140 should be remitted under the language of section 1466. Section 1466(a) provides:

> The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country....

19 U.S.C. § 1466(a) (1982).

Section 1466(d), which governs remission of duties paid for repairs made in a foreign country, provides, in part:

> If the owner or master of such vessel furnishes good and sufficient evidence that—
>
> (1) such vessel, while in the regular course of her voyage, was compelled, *by stress of weather or other casualty*, to put into such foreign port and purchase such equipments, or make re-

pairs, to secure the safety and seaworthiness of the vessel *to enable her to reach her port of destination;*

then the Secretary of the Treasury is authorized to remit or refund such duties....

19 U.S.C. § 1466(d)(1) (emphasis added).

Section 1466(d) places upon the plaintiff the burden of establishing the statutory criteria by "good and sufficient evidence." 19 U.S.C. § 1466(d); *see, e.g., Mount Washington Tanker Co. v. United States*, 1 CIT 32, 505 F.Supp. 209 (1980), *aff'd*, 69 CCPA 23, 665 F.2d 340 (1981); *see also Suwannee S.S. Co. v. United States*, 79 Cust.Ct. 19, C.D. 4708, 435 F.Supp. 389 (1977). Furthermore, it cannot be questioned that Congress expressly delegated to the Secretary the discretion to determine whether, under the circumstances, the duties were to be remitted or refunded. 19 U.S.C. § 1466(d).

In the *Suwannee* case, the plaintiff challenged the Secretary's decision not to remit duties paid pursuant to section 466 of the Tariff Act of 1930, which is presently codified at 19 U.S.C. § 1466. The plaintiff contended that the duties should have been remitted because the foreign repairs were the result of a casualty. The Secretary refused to remit because the "casualty" which caused the need for repairs had occurred on a prior voyage. The court held the Secretary's decision not to remit the duties was not an abuse of discretion, and was in accordance with law.

In *Suwannee*, the court reviewed the legislative history of section 1466, and determined that its purpose was to protect American labor. 79 Cust.Ct. at 26, 435 F.Supp. at 394. The court noted that the unsuccessful attempts in the House of Representatives to amend section 1466 so as to enlarge the remission provision's coverage were indicative of the strong measures sought by Congress to protect the domestic shipbuilding industry. *Id.* The court also noted that the Senate version of section 1466 narrowed the remission provision's coverage in two ways. First, it required that the repairs be necessitated "by stress of weather or other casualty." Second, it limited remission to those repairs which are

"necessary to secure the safety and seaworthiness of the vessel *to enable her to reach her port of destination." Id.* (emphasis added). Consequently, the *Suwannee* case noted that Congress intended to formulate "a narrow and strict remission provision." *Id.; see also Mount Washington Tanker Co. v. United States,* 1 CIT 32, 38–39, 505 F.Supp. 209, 214 (1980), *aff'd,* 69 CCPA 23, 665 F.2d 340 (1981). Simply stated, the statute is meant "to encourage U.S. shipowners to employ U.S. labor whenever possible." *Mount Washington,* 69 CCPA at 28, 665 F.2d at 344.

■ In this case, the Secretary denied plaintiff's demand for the remission of the duties assessed on the cost of the Canadian repairs made to the Nepco 140. Plaintiff maintains that the Secretary improperly refused to remit the duties paid. A careful examination of the facts and relevant statutes reveals that the Secretary's decision was not an abuse of discretion, and was in accordance with law.

Even assuming that reduced visibility caused by the fog satisfied the causational requirement of the statute, that is, "stress of weather or other casualty," plaintiff has failed to demonstrate that the repairs were necessary to "enable" the Nepco 140 to "reach her port of destination." Indeed, there is no dispute that the Nepco 140 proceeded to Oswego, the port of destination in the United States, and discharged the balance of the cargo.

The facts show that the repairs made to the Nepco 140 were not necessary to enable her to reach her port of destination. Hence, plaintiff has not borne its burden of establishing the statutory criteria. Therefore, the court holds that the Secretary's decision is in accordance with law, and is not the result of an abuse of discretion.

■ Alternatively, plaintiff contends that section 1466 is unconstitutional as applied to the facts of this case. Plaintiff maintains that since it was impossible for an American Shipyard to make the repairs, the imposition of the duties was unconstitutional. This court has indicated that "[p]laintiff can only succeed on its constitutional challenge by rebutting the strong presumption that legislation duly enacted by Congress is constitutional." *Erie Navigation Co. v. United States,* 83 Cust.Ct. 47, 49, C.D. 4820, 475 F.Supp. 160, 162 (1979).

In support of its constitutional argument, plaintiff maintains that this case raises issues mentioned in dicta in the *Erie Navigation* case, which stated that, "[h]ad the plaintiff proven that it was impossible for its vessel ... to reach an American drydock facility for the required inspection, the question would then be presented as to the reasonableness of the statute as applied to the particular case." *Id.* at 52, 475 F.Supp. at 164. In the *Erie Navigation* case, the court noted:

> It is by now well established that legislative acts adjusting the burdens and benefits of economic life come to the court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Id.* at 49, 475 F.Supp. at 162 (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)).

Plaintiff, therefore, must bear the burden of establishing the facts necessary for a determination of unconstitutionality. From the evidence adduced at trial, the court is not persuaded that it was "impossible" for the barge to be repaired at an American facility. Indeed, at trial, the defendant called Mr. Kenneth Johnson, an employee of Fraser Shipyards, who testified that Fraser was capable of performing the needed repairs, although certain repairs might be "subcontracted out." Plaintiff's witness, Mr. Daniel Kaplan, whose duty was to "secure competitive bids, to find a yard capable of carrying out the repairs," declined to have the work done at Fraser Shipyards.

The testimony reveals that Mr. Kaplan exercised his business judgment by not having the work performed in the United States. For example, although Hannah Inland Waterways telexed Mr. Kaplan that

Hannah could clean and gas-free the barge, Mr. Kaplan declined their services. Hence, it has not been established that it was impossible to find a domestic yard to perform the work. The alleged "impossibility" to which plaintiff makes reference was a business decision to have the repairs made in Canada.

Since plaintiff has failed to show that no American facility would have been able to make the necessary repairs to the Nepco 140, the court is not presented with the question raised in dicta in the *Erie Navigation* case. In view of plaintiff's failure to establish that section 1466 is unconstitutional as applied to the facts of this case, the challenge to its constitutionality must fail. *See Erie Navigation Co. v. United States*, 83 Cust.Ct. at 52, 475 F.Supp. at 165.

Plaintiff has not established that it meets the statutory criteria which would authorize the secretary to remit the duties paid. Furthermore, since plaintiff has neither proven its factual allegations, nor established that, as applied, section 1466 is unconstitutional, its constitutional challenge must also fail. Accordingly, the Secretary's determination not to remit the duties paid is upheld.

Plaintiff's action is dismissed.